# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON

**UNITED STATES OF AMERICA**

**v.**                                              **CRIMINAL NO. 2:24-cr-00070-001**

**JUSTIN SAUNDERS**

## SENTENCING MEMORANDUM OF THE UNITED STATES

Comes now the United States of America, by Judson C. MacCallum, Assistant United States Attorney, and submits this memorandum in support of the United States' position on sentencing issues.

## PSR OBJECTIONS

There are no pending objections by the United States. The Defendant submitted 10 objections for various issues and are addressed herein.

**Objection 1:** Defendant objects to paragraphs 16, 17, 18, 20, 30, 31-35, and 37. Essentially he provides his own version of facts while challenging the facts as contained in the PSR and discovery derived from the investigation, witness statements, and sworn grand jury testimony. A district court "may consider any relevant information before it, including uncorroborated hearsay, provided that the information has sufficient indicia of reliability to support its accuracy." *United States v. Mondragon*, 860 F.3d 227, 233 (4th Cir. 2017) (internal quotation marks omitted); *see U.S. Sentencing Guidelines Manual* § 6A1.3(a) (2024). The defendant bears "an affirmative duty to show that the information in the presentence report is unreliable, and articulate the reasons why the facts contained

therein are untrue or inaccurate." *Mondragon*, 860 F.3d at 233 (internal quotation marks omitted).

As illustrated in Probation's response, the information in the PSR is based on discovery available to all parties. Nothing in the discovery supports the Defendant's version of the information submitted in his objection. The Defendant has the burden to show the information in the PSR is unreliable and articulate why the facts are untrue or inaccurate. Simply claiming a fact isn't true through an objection neglects his affirmative duty. Defendant can present to the record whatever evidence he wishes, but until it exists, his objection should be overruled and no amendment to the PSR is necessary.

**Objection 2:** Defendant also objects to conversion rate of the U.S. currency found at the apartment. He contends that he and others sold fentanyl for $100 per gram. That claim is not supported by the investigation or discovery. The United States assumes this claim comes from conversations between Defendant and his counsel. As stated by Probation, the record clearly demonstrates Defendant's pricing scheme for methamphetamine. Further, although a large amount of fentanyl was recovered from the apartment, the investigation focused on the sale of methamphetamine, which also comprised the vast majority of the seized drugs. More importantly, there is nothing in the record demonstrating the valuation of fentanyl sales attributed to the Defendant. His objection should be overruled and the currency conversion remain unchanged.

**Objection 3:** Defendant objects to metonitazene being treated as fentanyl for guideline calculation purposes. The United States agrees with Probation that the objection should be overruled. U.S. Department of Justice guidance supports Metonitazene being treated as fentanyl for guideline purposes. Drug Enforcement

Administration pharmacologists further confirm that fentanyl is the substance most analogous to Metonitazene.

**Objection 4:** Defendant requests a change in the attributable drug weight assuming objections 2 and 3 are sustained. For the reasons stated above, the United States requests this objection overruled.

**Objection 5:** Defendant requests an alternative converted drug weight calculation based on an assumed downward variance for methamphetamine "ice". The United States objects and joins in the response by Probation. The PSR should remain unchanged as the guidelines must be accurately calculated. Any variance can be addressed at sentencing.

**Objection 6:** Defendant reasserts his objections from 2 and 3 and requests a corresponding change in the converted drug weight calculation. Based on the foregoing reasons, the objection should be overruled.

**Objection 7:** Defendant objects to the application of the two-level firearm enhancement pursuant to USSG § 2D1.1(b)(1). He admits that two pistols were found in the apartment kitchen but claims he did not "possess" them. He argues the firearms that were found belonged to Evan Edens. As with previous objections, Defendant provides his version of the events without any support of those facts in the record.

The enhancement should be applied if a weapon was present, unless it is clearly improbable that the weapon was connected with the offense. USSG § 2D1.1 cmt. n.11(A).

"The government bears the initial burden of proving, by a preponderance of the evidence, that the weapon was possessed in connection with the relevant illegal drug activity." *United States v. Mondragon*, 860 F.3d, 231 (2017). Establishing the requisite

nexus requires the Government to "prove only that the weapon was present, which it may do by establishing a temporal and spatial relation linking the weapon, the drug trafficking activity, and the defendant." *Id.* (internal quotation marks omitted). "If the government carries its burden, the sentencing court presumes that the weapon was possessed in connection with the relevant drug activity and applies the enhancement, unless the defendant rebuts the presumption by showing that such a connection was clearly improbable." *Id.* (internal quotation marks omitted).

Here, the two pistols were both found in the kitchen of the apartment. Also found in just the kitchen was a drug press, drug ledger book, digital scales, blender containing white powdery substance, multiple bags of powdery substances, a bag of methamphetamine (inside fridge), and Defendant's debit card. These items are all in addition to the kilograms of methamphetamine and pounds of fentanyl and fentanyl-like substances found throughout the apartment.

Further, the type of firearm found—two pistols—is relevant. "In assessing whether a defendant possessed a firearm in connection with relevant drug activity, a sentencing court is entitled to consider several pertinent factors. One important factor is the type of firearm involved." *See United States v. Drozdowski*, 313 F.3d 819, 822 (3d Cir. 2002) *United States v. Manigan*, 592 F.3d 621, 629. Pistols have been deemed "a tool of the drug trade because it is easy to conceal yet deadly." *See United States v. Ward*, 171 F.3d 188, 195 (4th Cir. 1999).

Defendant asserts that the firearms "belonged" to another individual, Evan Edens, which should be irrelevant to the Court's analysis. The Fourth Circuit Court of Appeals has previously determined "it [is] fairly inferable that a codefendant's possession of a

dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." *United States v. Kimberlin*, 18 F.3d 1156, 1160 (4th Cir. 1994) (internal citations omitted). Here, even though Edens claimed ownership of one of the pistols in the kitchen, that is inconsequential. Edens admitted that he was involved in the distribution of drugs with Saunders. Edens further testified to seeing Saunders with firearms at his apartment. Ownership of a firearm does not preclude the application of § 2D1.1(b)(1) to another. The weapons were clearly possessed in connection with Defendant's illegal drug activity. The firearms were found in close proximity to drugs and an assortment of drug distribution paraphernalia. His objection should be overruled.

**Objection 8:** Defendant objects to the application of the two-level enhancement for maintaining a premises for distribution of a controlled substance, pursuant to USSG § 2D1.1(b)(12). Defendant again offers facts that aren't contained in the discovery or PSR. If Defendant elects to put those facts in the record through his testimony or any other evidence, only then should they be considered. However, he contends that this apartment was not a typical "stash" or "trap" house, rather it was his primary residence. Further, that an application with these facts would presume the application of the enhancement anytime drugs and money are kept at a residence.

This argument is an incomplete statement of the rule and not factually correct. The Guidelines provide for this enhancement when a premises is maintained for the purpose of manufacturing or distributing a controlled substance. The commentary clarifies that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or

5

principal uses for the premises." USSG § 2D1.1 cmt. n.17. Here, Defendant resided at the apartment, rented at his direction, by a third-party. Defendant directed the third-party to meet the landlord and claim she was the only person residing at the apartment. Defendant paid the security deposit and monthly rent. Defendant clearly maintained a possessory interest, as he was the living there an orchestrated its rental. Further, this arrangement creates a level of separation for the Defendant and his drug distribution, providing him a shred of deniability if the distribution efforts were discovered by authorities.

The third-party on the lease seemingly had no knowledge of the activities in the apartment as she denied any knowledge of anything illegal. The other people in the apartment were all connected to Defendant. Importantly, Defendant directed others to arrive at his apartment to assist in distributing drugs. Investigators observed people regularly arrive and depart the apartment. The confidential source told investigators Defendant gave him two pounds of methamphetamine at the apartment and directed him to distribute it. The confidential source further stated they observed approximately 50-60 pounds of methamphetamine and two large gallon plastic bags of suspected fentanyl at the apartment. Edens testified that he observed blenders mixing in the kitchen. Significant quantities of drugs were found in the apartment, along with a drug press and other distribution paraphernalia. Defendant controlled the drug distribution activities in the apartment.

It is apparent from the investigation, interviews and sworn testimony, that Defendant maintained the apartment for the primary use of manufacturing and distributing controlled substances. Defendant's objection should be overruled.

**Objection 9:** Defendant requests an adjustment to his offense level calculations corresponding to his previously addressed objections. This objection requires no response as the Court will undoubtedly adjust the final calculations, if necessary, according to its rulings on objections.

**Objection 10:** The United States agrees with Probation's response to the objection relating to the supervised release condition contained in paragraph 109. This is a standard condition adopted by the district and imposed in every case before the Court. Further, it does not appear to hinder the rights of Defendant as contemplated in the objection.

## SENTENCING FACTORS

Defendant is a large-scale distributor of methamphetamine and fentanyl in the Southern District of West Virginia. Over 7 kilograms of methamphetamine "ice" and several pounds of fentanyl, mixtures containing fentanyl and other substances, and fentanyl like chemicals were seized during the investigation. He was attributed another nearly 10 kilograms of methamphetamine after converting the seized U.S. currency. The converted drug weight corresponds to a base offense level of 38—the highest level on the drug quantity table.

Defendant received his first felony conviction in 2017 after pleading guilty in Kanawha County, West Virginia to conspiracy to possess with intent to deliver Xanax. He received the benefit of youthful offender treatment at the Anthony Center in lieu of 1-5 years in prison. He successfully completed the Anthony Center and was released to one year of probation. While on probation, he was charged in Logan County, West Virginia for fleeing with reckless indifference, battery on an officer and a myriad of traffic related

infractions. The charges stemmed from his interaction with police during an investigation resulting in cursing at the officers before speeding away putting other people in danger. After fleeing in his vehicle, he eventually fled on foot and punched an officer during his apprehension. He plead to fleeing on foot and battery on an officer. His probation was revoked, and he was sentenced to the underlying 1-5 years in prison. He was paroled in 2020 and discharged parole in 2021.

     Defendant paid $1,100 monthly for rent from July 2023 until his arrest in February 2024. Defendant has no identifiable employment or income since his release other than "odd jobs" for cash. It appears he supported himself through distributing drugs. Fortunately, the Defendant's involvement with the justice system has been limited since discharging parole. Unfortunately, his reintroduction came after being caught distributing significant quantities of methamphetamine and fentanyl.

**SENTENCING RECOMMENDATION**

Defendant is exposed to a mandatory minimum term of imprisonment of 5 years and a maximum term of 40 years. The Sentencing Guidelines call for a sentence between 324 and 405 months, to be followed by at least four years of supervised release. Defendant was high-level methamphetamine and fentanyl distributor. His prior prison sentence was inadequate and failed to deter his criminal behavior. The sentencing factors support a guideline sentence to be followed by four years of supervised release.

<div style="margin-left:auto">

Respectfully submitted,

LISA G. JOHNSTON
Acting United States Attorney

By:

/s/Judson C. MacCallum
JUDSON C. MACCALLUM
Assistant United States Attorney
WV State Bar No. 11632
300 Virginia Street, East
Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: Judson.maccallum@usdoj.gov

</div>

# CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "SENTENCING MEMORANDUM OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 30th day of June, 2025, to:

>Lex A. Coleman
>Office of the Federal Public Defender
>300 Virginia Street, East, Room 3400
>Charleston, WV 25301
>E-mail: Lex_Coleman@fd.org

>/s/Judson C. MacCallum
>JUDSON C. MACCALLUM
>Assistant United States Attorney
>WV State Bar No. 11632
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone: 304-345-2200
>Fax: 304-347-5104
>E-mail: Judson.maccallum@usdoj.gov